UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA GAFFNEY<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>SELECT PORTFOLIO SERVICING, INC. JOHN DOES I-X,<br><br>　　　Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Theresa Gaffney of full age, Complain of Defendant as follows:

## JURISDICTION AND VENUE

**1.** Jurisdiction is appropriately laid in the United States District Court, District of New Jersey under 28 USC §1331 as this claim is based upon a federal statute and federal question jurisdiction.

**2.** Venue is appropriately laid in the District Court of New Jersey under 28 U.S.C. §1391(b)(2) as the events causing the claim occurred substantially within the State of New Jersey.

## PARTIES

**3.** Plaintiff Theresa Gaffney owns and resides in the real property at 100 Union Grove Road, Far Hills, New Jersey.

**4.** Defendant Select Portfolio Servicing, Inc. ("SPS") is the loan servicer for

1

the mortgage loan associated with Plaintiff's Far Hills, New Jersey residence. SPS maintains its principal location of business in Salt Lake City, Utah. For service of process, SPS maintains an agent in New Jersey known as Corporation Service Company with an address at Princeton South Corporate Ctr Ste 160, 100 Charles Ewing Blvd, Ewing, New Jersey 08628.

## FACTUAL ALLEGATIONS

5. Theresa Gaffney owns and resides in the real property at 100 Union Grove Road, Far Hills, New Jersey.

6. In January 2007 Ms. Gaffney refinanced the mortgage loan secured by her residence, and executed a promissory payable to Washington Mutual Bank, FA.

7. The loan was sold after closing and J.P. Morgan Chase Bank, N.A., successor by merger to Washington Mutual Bank, FA remained servicer of the loan.

8. Following a financial hardship, Ms. Gaffney defaulted on the mortgage loan.

9. In 2010 a foreclosure lawsuit was filed. The foreclosure lawsuit remains ongoing as of July 2018.

10. Several years later, servicing of the loan was transferred to SPS.

11. Since becoming servicer of the loan, SPS has engaged in debt collection activities on behalf of the owner of the loan U.S. Bank N.A., successor trustee to

Bank of America, N.A. successor in interest to LaSalle Bank N.A. as trustee, on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-OA3.

12. In May 2017, Ms. Gaffney notified SPS that she was represented by legal counsel Adam Deutsch, Esq. of Northeast Law Group, LLC. At that time, Ms. Gaffney instructed SPS to send all communications regarding the loan to Mr. Deutsch.

13. Ms. Gaffney sent SPS a letter dated March 23, 2018 stating in part:

> I am now represented by attorney Adam Deutsch, Esq. of Northeast Law Group, LLC. Please direct all correspondence to my counsel at the following address:
>
> Adam Deutsch, Esq.
> Northeast Law Group, LLC
> P.O. Box 60717
> Longmeadow, MA 01106

14. The March 23, 2018 letter was a Qualified Written Request including a Request for Information under 12 U.S.C. §2605 and 12 C.F.R. 1024.36.

15. The March 23, 2018 letter was sent to the specific designated address SPS maintains for receipt of Qualified Written Requests.

16. The March 23, 2018 letter identified the name of the borrower, loan number, and the information being requested regarding the mortgage loan.

17. The March 23, 2018 request asked SPS to provide documents relating to twelve separately described categories relating to the servicing of Ms. Gaffney's

3

loan.  The itemized topics included:

> 10. Copies of all loss mitigation correspondence between me and Select Portfolio Servicing, Inc.; and
> 11. For each loss mitigation application you have received from me, please provide
>   a. The date it was received;
>   b. The date you sent correspondence acknowledging receipt of the application;
>   c. Copies of correspondence requesting additional documentation and/or information;
>   d. Copies of correspondence confirming the application was complete; and
>   e. Copies of records relating to your evaluation of my application including your determination of which loss mitigation options were available to me, and which options were not available.
> 12. Please also disclose all loss mitigation programs available to me based on my loan.

**18.**  By letter dated March 29, 2018, SPS confirmed that it received the Qualified Written Request on March 27, 2018, together with a request that all communications be directed to Ms. Gaffney's attorney.

**19.**  By letter dated April 9, 2018, SPS acknowledged receipt of the March 23 Qualified Written Request and provided an incomplete response.  The response was sent by mail to Ms. Gaffney's attorney.

**20.**  The April 9, 2018 correspondence from SPS failed to answer each request in the Qualified Written Request.  The SPS letter states in part:

> The remaining documentation requests are overbroad and unduly burdensome, and will not be fulfilled.  However, if you are in need of further specific documentation, please advise of which and we will do our best to

4

provide.

21. The April 9, 2018 letter further states:

> SPS has reviewed and responded to the inquiry as discussed above. Your client may request, and we will provide at no charge, copies of the documents that we relied on in reaching our determination. If we cannot provide such documents because they are privileged or proprietary, we will advise your client.
>
> Please send any such requests to:
>
> Select Portfolio Servicing, Inc.
> Attn: Research Documents
> P.O. Box 65277
> Salt Lake City, UT 84165-0277

22. On or about May 4, 2018, Ms. Gaffney sent a follow up to the March 23, 2018 Qualified Written Request to the address provided by SPS. The follow up letter referenced the March 23, 2018 Qualified Written Request and quoted SPS April 9 letter regarding follow up requests.

23. The follow up letter requests SPS to provide "copies of all documents you relied on in reaching your determination."

24. The follow up letter also requests production of documents SPS failed to produce in its April 9, 2018 correspondence. For each of the requested items, Ms. Gaffney specifically described the information sought, and an explanation of why the documents were being requested.

25. The follow up Qualified Written Request confirmed that Ms. Gaffney

continued to be represented by legal counsel Adam Deutsch, Esq. of Northeast Law Group, LLC and again requested all correspondence to be sent to counsel.

**26.** By letter dated May 14, 2018, SPS acknowledged receipt of the follow up Qualified Written Request.

**27.** By letter dated May 21, 2018, SPS sent correspondence to Ms. Gaffney's attorney stating in part:

> Select Portfolio Servicing, Inc. (SPS) received correspondence on 05/17/2018 from you or your authorized agent regarding the account referenced above. This correspondence was sent to our dedicated Dispute/Inquiry mailbox. Because the letter did not raise an issue with the servicing of your account, we have directed your correspondence to the appropriate department for handling, and we consider this matter closed.

**28.** On or about May 29, 2018, Ms. Gaffney sent a second follow up Qualified Written Request seeking production of the same documents requested in the first follow up request.

**29.** The second follow up Qualified Written Request was sent to the address provided by SPS.

**30.** The second follow up further confirmed that Ms. Gaffney remained represented by Adam Deutsch, Esq. of Northeast Law Group, LLC and directed that all correspondence regarding the loan should be sent to counsel.

**31.** The second follow up Qualified Written Request referenced the original

March 23, 2018 request and the follow up May 4 Qualified Written Request. The second follow up further referenced and quoted SPS' correspondence instructing how to follow up with a request for further documentation.

32. By letter dated June 6, 2018, SPS sent correspondence to Ms. Gaffney's attorney confirming receipt of the second follow up Qualified Written Request.

33. By letter dated June 7, 2018, SPS sent correspondence to Ms. Gaffney's attorney stating in part:

> Select Portfolio Servicing, Inc. (SPS) received correspondence on 06/04/2018 from you or your authorized agent regarding the account referenced above. This correspondence was sent to our dedicated Dispute/Inquiry mailbox. Because your letter did not raise an issue with the servicing of your account, we have directed your correspondence to the appropriate department for handling, and we consider this matter closed.

34. Following the June 7, 2018 correspondence, SPS has issued no correspondence relating to the Qualified Written Request.

35. Thereafter, SPS directed debt collection correspondence directly to Ms. Gaffney at her residence, instead of sending it to her legal counsel.

36. SPS sent correspondence dated June 14, 2018 directly to Ms. Gaffney at her Far Hills, New Jersey home. The letter seeks payment on the loan.

   a. The June 14 letter states "This is an attempt to collect a debt. All information obtained will be used for that purpose.

    b. The June 14 letter claims the monthly payment owed by Ms. Gaffney is $7,527.08.

37. SPS sent correspondence dated July 12, 2018 directly to Ms. Gaffney at her Far Hills, New Jersey home.  The letter seeks payment on the loan.

    a. The July 12, 2018 letter states "This is an attempt to collect a debt. All information obtained will be used for the purpose."

    b. The July 12, 2018 letter claims the monthly payment owed by Ms. Gaffney is $9,111.37.

38. Ms. Gaffney sent SPS a loan modification application which it received on May 11, 2018.

39. SPS sent correspondence dated May 22, 2018 to Ms. Gaffney's attorney, confirming receipt of the loan modification application.

40. The May 22, 2018 letter explained that Ms. Gaffney's loan modification application was incomplete, listed documentation she needed to submit to make the application complete, and stated "we must receive the missing Required Information on or before June 21, 2018."

41. On June 2, 2018 SPS received the missing required documentation.

42. SPS did not send correspondence acknowledging receipt of the June 2, 2018 loan modification documents.

43. SPS conducted no review of Ms. Gaffney's complete loan modification

application.

**44.** SPS did not send correspondence denying Ms. Gaffney for a loan modification.

**45.** On July 11, 2018 SPS sought entry of final judgment, in the foreclosure lawsuit, which if granted will cause the home to be sold at sheriff sale.

## COUNT I

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

**46.** Plaintiff reincorporates by reference all allegations previously set forth.

**47.** SPS violated 12 C.F.R. 1024.41 in one or more of these ways:

  a. SPS failed to acknowledge receipt of the June 2 loan modification documents within five business days.

  b. SPS failed to confirm in writing that the loan modification application was complete, or to explain why the application remained incomplete, following receipt of the June 2, 2018 loan modification documents.

  c. SPS failed to fully review the modification application within thirty days of June 2, 2018.

  d. SPS moved for foreclosure judgment on July 11, 2018 in violation of 12.C.F.R. 1024.41(g).

48. SPS violated 12 C.F.R. 1024.36 in one or more of these ways:

   a. SPS failed to conduct a reasonable search for the requested information.

   b. SPS failed to provide Ms. Gaffney with the requested information.

   c. SPS wrongfully refused to produce requested information that directly related to the servicing of Ms. Gaffney's mortgage loan.

   d. SPS' failure to produce the requested documents was not the result of the requested information being unavailable to SPS.

49. The information requested by Ms. Gaffney relates to servicing of the loan.

50. The information sought by Ms. Gaffney is not subject to the 12 C.F.R. 1024.36(f).

51. SPS conduct violates 12 U.S.C. §2605.

52. Because of SPS' actions, Ms. Gaffney suffered injury including but not limited to the charging of excessive interest, deprivation of a loss mitigation opportunities, lost time, aggravation, and stress.

53. Plaintiff demands all relief in 12 U.S.C. §2605 including actual damages, statutory damages, attorney fees, costs of suit and all other relief the Court finds suitable.

## COUNT II

## VIOLATION OF THE FAIR DEBT COLLECITON PRACTICES ACT

54. Plaintiff reincorporates by reference all allegations previously set forth.

55. Ms. Gaffney is a consumer as defined by 15 U.S.C. §1692a.

56. The mortgage loan associated with Ms. Gaffney's primary residence is a debt as defined by 15 U.S.C. §1692a.

57. SPS is a debt collector as defined by 15 U.S.C. §1692a. SPS became the loan servicer after Ms. Gaffney's loan was declared in default and accelerated.

58. The June 14, 2018 and July 12, 2018 correspondence SPS sent to Ms. Gaffney are communications as defined by 15 U.S.C. §1692a.

59. In May 2017, March 2018, April 2018 and May 2019, Ms. Gaffney reaffirmed to SPS that she was represented by legal counsel. SPS knew Ms. Gaffney was represented by legal counsel in relation to the mortgage loan and that she wanted all communications relating to the loan to be sent to legal counsel.

60. SPS knew how to contact Adam Deutsch, Esq., legal counsel for Ms. Gaffney.

61. The Fair Debt Collection Practices Act 15 U.S.C. §1692c states in part:

> (a) Communication with the consumer generally. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>
> …
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and

> has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

62. Ms. Gaffney has not revoked the request for SPS to communicate with her legal counsel, and Ms. Gaffney remains represented by Mr. Deutsch of Northeast Law Group, LLC.

63. Ms. Gaffney's attorney did not consent to SPS directly communicating with Ms. Gaffney.

64. SPS violated 15 U.S.C. §1692c by sending debt collection communications to Ms. Gaffney.

65. The Fair Debt Collection Practices Act 15 U.S.C. §1692e prohibits the "use of false, deceptive, or misleading representation or means in connection with the collection of any debt."

66. The Fair Debt Collection Practices Act 15 U.S.C. §1692e further prohibits "the false representation of (A) the character, amount, or legal status of any debt."

67. The Fair Debt Collection Practices Act 15 U.S.C. §1692e further prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

68. The June 14, 2018 and June 12, 2018 debt collection correspondence SPS

sent to Ms. Gaffney violate 15 U.S.C. §1692e and contain false, deceptive, and/or misleading representations of the sum of money owed on the loan.

69. The June 14, 2018 letter states the amount owed under the monthly payment is $7,527.08. The July 12 letter states the amount owed under the monthly payment is $9,111.37.

70. The change in amount owed demanded by SPS is false, deceptive, and or misleading.

71. Between June 2018 correspondence and July 2018 correspondence, Ms. Gaffney's interest rate went down.

72. According to July 2, 2018 correspondence SPS sent to Ms. Gaffney at her home, SPS increased the amount owed on the loan for Principal and Interest by $1,792.92 between the June 2018 statement and the July 2018 statement. This change attempts to collect money not owed on the loan, and a misrepresentation of the amount owed in violation of 15 U.S.C. §1692e.

73. The July 12 debt collection correspondence sent by SPS violates 15 U.S.C. §1692f because it is an unconscionable and/or unfair attempt to collect an amount of money not expressly authorized by the loan agreement or otherwise permitted by law.

74. Because of SPS' conduct, Ms. Gaffney has suffered damages including but not limited to the overcharging of the amount due, as well as stress and anxiety

from being subjected to unwanted unlawful contact from a debt collector.

**75.** Ms. Gaffney is entitled to all relief available under 15 U.S.C. §1692k including but not limited to statutory damages, actual damages, attorney fees and costs of suit.

**WHEREFORE**, PLAINTIFF demands:

   a. Compensatory Damages

   b. Punitive Damages

   c. Statutory Damages

   d. Restitution

   e. Injunctive Relief

   f. Attorney fees and costs

   g. All other relief this Court determines to be just and fair.

**THE PLAINTIFFS DEMAND A JURY TRIAL ON ALL CAUSES OF ACTION ASSERTED HEREIN THAT ARE TRIABLE BY JURY.**

Dated: July 31, 2018

                                    NORTHEAST LAW GROUP, LLC
                                    ATTORNEYS FOR PLAINTIFFS

                                    */S/ Adam Deutsch*
                                    Adam Deutsch, Esq.